**Douglas WELSH, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (L.W. MILLER ROOFING CO. and J.L. Miller Roofing Co.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 13, 1996.
Decided Dec. 5, 1996.

---

E.J. Julian, Washington, for petitioner.

Scott H. Fergus, Washington, for respondents.

Before DOYLE and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Douglas Welsh (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board), which reversed a decision of a Worker's Compensation Judge (WCJ) to reinstate the total disability benefits of Claimant.

On November 7, 1991, Claimant sustained work-related back and neck injuries while working as a laborer for L.W. Miller Roofing Company (Employer). A notice of compensation payable was issued on November 26, 1991, pursuant to which Claimant received a weekly disability rate of $371.55 based upon an average weekly wage of $557.33. By a supplemental agreement dated February 11, 1992, Claimant's benefits were suspended, and Claimant returned to work in a full-duty capacity. Claimant's benefits were reinstated on April 20, 1992, and subsequently suspended again on May 7, 1992, when he returned to a light-duty position with Employer.

Claimant worked in a light-duty capacity for Employer until June 9, 1992. At that time, Claimant was offered a job with Burns & Scalo, another roofing company purportedly offering better benefits. When Employer declined to match the offer of Burns & Scalo, he voluntarily resigned from his position with Employer and commenced employment with Burns & Scalo. Claimant, on June 12, 1992, was laid off from his position with Burns & Scalo after three days of work.[1]

On December 3, 1992, Claimant filed a petition to reinstate his compensation benefits effective June 14, 1992, which was granted by the WCJ in an order dated September 19, 1994. In an opinion and order dated January 25, 1996, the Board reversed the WCJ's decision. Claimant now appeals to this Court.

■ On appeal,[2] Claimant argues that, because "his disability is again affecting his

1. Claimant did not contact Employer about returning to his former position until November 22, 1993. However, although Employer had not filled his position for over a year after he resigned, the position had been filled in June of 1993 and, therefore, no work was available in November of 1993.

2. Our scope of review is limited to determining whether findings of fact are supported by sub-

earning power through no fault of his own and the disability that gave rise to the original claim continues," the Board erred in reversing the decision of the WCJ which reinstated his benefits. (Claimant's Brief at 10.) We disagree.

■ A claimant petitioning to have his benefits reinstated after they have been suspended bears the burden of demonstrating that the reasons for the suspension no longer exist. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990). In this regard, the claimant must prove two things:

First, he must prove that *through no fault of his own* his earning power is once again adversely affected by his disability. And second, that the disability which gave rise to his original claim, in fact, continues.

*Id.* at 34, 584 A.2d at 305 (emphasis added).

In *Huber v. Workmen's Compensation Appeal Board (Liberty Mutual Insurance Co.),* 154 Pa.Cmwlth.423, 623 A.2d 962, *petition for allowance of appeal denied,* 535 Pa. 635, 631 A.2d 1007 (1993), we held that, because the claimant voluntarily left his job, he failed to meet his burden in proving that the reason for the suspension of his benefits no longer existed. Moreover, we stated that "this [Court has] held that benefits are properly suspended when a claimant voluntarily leaves a post-injury job." *Id.* 623 A.2d at 964 (referring to *Kunigonis v. H.P. Foley, Inc.,* 28 Pa.Cmwlth. 73, 367 A.2d 763 (1977)). We also stated in *Huber* that:

'[A] recurrence of a claimant's loss of earnings must be though no fault of his own.'

Claimant lost earnings because he left [his job] to start his own business; the record is devoid of any evidence that Claimant left [his job] because of his disability.

*Id.* (quoting *Pieper,* 526 Pa. at 34 n. 8, 584 A.2d at 305 n. 8.).

Furthermore, with respect to whether a claimant's earning power is adversely affected *through no fault of his own,* we stated

that "[a]t a bare minimum, an able-bodied claimant has an obligation to ask for his old job back." *Id.* This same logic would be equally as applicable where a claimant voluntarily leaves a light-duty position, the duties of which he was able to perform despite his injury, to take another job.

■ In the instant matter, Claimant voluntarily left his light-duty position with Employer for what he perceived to be a better job with another roofing company. Claimant testified before the WCJ as follows:

Q: Did you leave your employment with L.W. Miller Roofing around June 10, 1992?

A: Yes sir.

Q: What was the reason that you left that employment?

A: Because I got a job offer.

Q: And who did you receive that offer from?

A: Burns & Scalo Roofing over in Bridgeville.

Q: Did you receive more money from Burns & Scalo Roofing, or better benefits?

A: Better benefits.

(Notes of Testimony, 2/10/93, at 9; Reproduced Record (R.R.) at 18a.) Claimant voluntarily resigned from his light-duty position with Employer to take another job and, thus, assumed the risks typically associated with such a decision; namely, being laid off from the "better" job. Thus, Claimant's unemployment was directly caused by the resignation from his job with Employer, rather than by the injury which originally gave rise to his suspended disability benefits.

Thus, we hold that the Board correctly concluded that Claimant failed to demonstrate that the reason for suspending his benefits no longer existed, when his voluntary resignation alone justified such a suspension.

Furthermore, Terry Moyer, Employer's Vice President and owner, testified at his deposition as follows:

stantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Lukens Steel Corp. v. Workmen's Compensation Appeal Board (Travillion),* 682 A.2d 417 (Pa.Cmwlth.1996).

**62**

Q: [D]id you keep that job available, was that job available?

A: It was available for a certain length of time.

Q: When was that job eventually filled?

A: It would have been probably around July of last year, '93.

Q: It was open for approximately a year?

A: Yeah.

. . . .

Q: If Mr. Welsh would have contacted you at any time from June of 1992, up until June or July of '93, when you filled this job, would that job have been available for him?

A: Yes.

Q: But, he did not contact you?

A: He did not.

(Deposition of Terry Moyer, 6/24/94, at 6–7; R.R. at 167a–168a.)

Therefore, the light-duty position from which Claimant resigned remained available to him for over a year after he quit. Instead of simply inquiring about his former position with Employer, he filed a petition to have his benefits reinstated. Claimant testified that he did not approach Employer about his former position until November 22, 1993, approximately seventeen months after he quit and approximately six months after he filed a reinstatement petition. No one at that time, however, was available to speak with Claimant about his former job. He made no previous or subsequent attempts to regain this light-duty position with Employer.

Under these circumstances, a claimant cannot truly be said to be out of work through no fault of his own as a result of a disability. Rather, it was Claimant's voluntary resignation from his light-duty position with Employer, as well as his lack of diligence in regaining that position, which had the most significant impact on his loss of earnings. Therefore, considering the fault attributable to Claimant in this case, we agree with the Board that Claimant did not meet his burden in proving that the reason for the suspension of his benefits no longer existed.

Thus, the Board was correct in reversing the decision of the WCJ and denying the petition to reinstate his benefits, and, accordingly, we affirm the order of the Board.

*ORDER*

**NOW**, December 5, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

