2 A.3d 548

**TERRY BUFFORD, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (NORTH AMERICAN TELECOM), Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2009.

Decided Aug. 17, 2010.

622

Matthew D. Dempsey, Lenahan & Dempsey, P.C., Scranton, for Terry Bufford.

Douglas Albert Williams, Thomas C. Baumann, Sitzmann Law Firm, Ltd., for PA Association for Justice.

Ross A. Carrozza, Audrey J. Copeland, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., King of Prussia, for North American Telecom.

Amber Marie Kenger, Richard C. Lengler, PA Department of Labor & Industry, for Worker's Compensation Appeal Board.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice McCAFFERY.

In this case, we revisit the issue of the appropriate allocation of the relevant burdens of proof when workers' compensa-

tion claimants seek reinstatement of suspended benefits pursuant to Section 413(a) of the Workers' Compensation Act ("Act"),[1] 77 P.S. § 772. Accordingly, we build upon the foundation laid by *Stevens v. Workers' Compensation Appeal Board (Consolidation Coal Co.)*, 563 Pa.297, 760 A.2d 369 (2000), and *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990), wherein we have made prior relevant interpretations of Section 413(a).

In September 1998, Appellant, Terry Bufford ("Claimant"), was working as a communications installer for Appellee, North American Telecom ("Employer"), when he sustained a work-related lower back injury after being struck by a car and then pinned by it against his own work vehicle. Employer issued a notice of compensation payable acknowledging Claimant's work-related injury and further acknowledging that the injury caused him temporary total disability. In October 1998, Claimant returned to work in a modified, light-duty position, and his workers' compensation benefits were accordingly reduced to partial disability. In March 1999, Claimant voluntarily left his light-duty position with Employer to begin work as an industrial electrician at a business called Ronco Machine ("Ronco") for higher pay and less onerous physical job requirements. Employer then filed a notification of suspension of benefits, asserting that Claimant was no longer suffering a loss of earnings due to his work-related injury.

In January 2003, after working four and one-half years for Ronco, Claimant was laid off for economic reasons. By this point, Employer had closed the facility out of which Claimant had worked, and it no longer maintained a work presence in the area.

In March 2003, Claimant filed a reinstatement petition, claiming that his work-related injury had worsened and that he was again experiencing decreased earning power caused by his work-related injury. Employer contested the petition, and the matter was heard by a workers' compensation judge ("WCJ"). In April 2005, the WCJ issued a decision denying

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

the reinstatement petition, concluding that any loss of earnings suffered by Claimant was caused by his lay-off from Ronco, not by a worsening of the work-related injury. Claimant appealed, and the Workers' Compensation Appeals Board ("WCAB") remanded the matter to the WCJ to make specific factual findings regarding whether Claimant had left his modified-duty employment with Employer because of his work-related injury or for reasons unrelated to the work injury.

Without taking additional evidence and based on testimony previously presented, the WCJ found, on remand, that Claimant had left his light-duty job with Employer because of his desire to pursue higher wages and not because of physical disability. The WCJ also specifically found, based on the credible testimony of Employer's expert medical witness, that Claimant's physical condition had not changed or worsened, as Claimant alleged, and that he remained capable of performing the light-duty job that he had formerly held with Employer. Based on these additional factual findings, the WCJ again denied Claimant's petition for reinstatement, specifically finding that any loss in Claimant's earning power was attributable solely to the fact that he had been laid off from Ronco, not to the work-related injury. The WCAB affirmed, as did the Commonwealth Court on further appeal.

We accepted review of this case, limited to consideration of the following two issues:

1.) Under 77 P.S. § 772, what burden of proof must a claimant who leaves a modified duty position to accept other employment, which involuntarily ends due to no fault of the claimant, meet in order to obtain reinstatement of his or her worker's compensation benefits, if the claimant remains disabled by his original work related injury?

2.) The parties are also to address in their briefs the question of how 77 P.S. § 772 allocates the burden of proof as between the claimant and the employer in reinstatement proceedings. *See Stevens v. W.C.A.B. (Consolidation Coal Company)*, 563 Pa. 297, 760 A.2d 369 (2000).

*Bufford v. Workers' Compensation Appeal Board (North American Telecom),* 600 Pa.126, 963 A.2d 1271 (2009) (*per curiam* ).

■ Our standard of review of an agency decision, including one of the WCAB, is limited to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pieper, supra* at 303. Here, the issues accepted for review relate only to issues of law. When the issue is the proper interpretation of a statute and is, therefore, a question of law, our standard of review is *de novo,* and the scope of the review to resolve the legal question is plenary. *Borough of Heidelberg v. Workers' Compensation Appeal Board (Selva),* 593 Pa.174, 928 A.2d 1006, 1009 (2007).

Section 413(a) of the Act provides in relevant part:

A workers' compensation judge ... may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.... [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury[,] ... payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, **unless it be shown that the loss in earnings does not result from the disability due to the injury.**

77 P.S. § 772 (emphasis added).

In *Pieper,* we rejected the contention that Section 413(a) requires that a claimant prove a "causal connection" between his or her prior work-related injury and any present disability in order to qualify for reinstatement of suspended benefits

under the Act. *Pieper, supra* at 304–05. Our determination rested on the distinction between what the Act required of a claimant seeking reinstatement of "terminated" benefits as opposed to what it required when a claimant sought reinstatement of benefits that had merely been "suspended." In the case of terminated benefits, the Act placed the burden on the claimant seeking reinstatement to show a causal connection between his or her current condition and the prior work-related injury. However, the Act imposed no equivalent requirement on the claimant seeking reinstatement of suspended benefits because the causal connection between the claimant's condition and the work-related injury is presumed. Indeed, the issue of suspension of benefits is focused on the question of whether the claimant's **earning power** has changed to the degree that benefits, in whole or in part, are no longer necessary. *Id.*

Because, however, many months or years might pass before a claimant seeks reinstatement of suspended benefits based on a change of economic circumstances, we noted that the law required the claimant to come forward with some quantum of proof to establish his or her renewed right to benefits. We described the claimant's burden as follows:

> First, he must prove that **through no fault of his own** his earning power is once again adversely affected by his disability. And [s]econd, that the disability which gave rise to his original claim, in fact, continues. He need not re-prove that the disability resulted from a work-related injury during his original employment, since its cause has never been at issue. However, because of the passage of time, the law does require that he prove by a preponderance of the evidence that it is the same disability that the law presumes occurred during his original employment and for which he initially received workmen's compensation benefits. In other words, that his disability has not ceased during the passage of time.

*Id.* at 305 (footnote and citation omitted; emphasis added).

Specifically with respect to the concept of "fault," we relevantly noted: "An employer may rebut [a] claimant's proof of

loss of earnings by establishing the availability of work that [the] claimant is capable of performing." *Id.* at 305, n. 8 (citations omitted).

Ten years later, in *Stevens, supra,* we reexamined Section 413(a) in a case where a claimant had not fully recovered from his work-related injury and, while working for a different employer, was terminated from employment for unsatisfactory job performance.[2] We affirmed the *Pieper* standard; however, in so doing, we rejected the employer's interpretation of that standard's concept of "through no fault of his own." The employer asserted that this concept required that a request for reinstatement of suspended benefits be denied where the claimant is terminated from different employment based on unsatisfactory job performance. The employer's argument was based on the premise that the claimant's loss of earnings should not be attributable to the work-related injury but to the claimant's "fault" of not performing his new employment within required expectations. *Stevens, supra* at 374.

We explained that we did not intend in *Pieper* that "the judicial construct" of "fault" be used in the manner argued by the employer. *Id.* Rather, we stated, "in *Pieper,* we indicated that the fault concept was tied to the availability of work." *Id.* (citing *Pieper, supra* at 305 n. 8). We then cited as relevant to the issue then before us our holding in *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels),* 560 Pa.12, 742 A.2d 649 (1999), as follows:

> Consistent with the purposes of the Act, as well as our decisional law and the decisions of the Commonwealth Court[,] **as a general rule, where a work-related disability is established, a post-injury involuntary discharge should be considered in connection with the separate determination of job availability rather than as dispositive of loss of earnings capacity.**

**2.** Unlike the facts of the present case, however, where Claimant left a light-duty position with his time-of-injury employer to take a job with a second employer, the claimant in *Stevens* never returned to work with his time-of-injury employer in any capacity.

*Stevens, supra* at 376–7 (quoting *Vista International Hotel, supra* at 657; emphasis added by *Stevens* ).

We further explained that "the separate determination of job availability" addressed concerns regarding the claimant's "good or bad faith in connection with termination, since fault-based considerations have been deemed relevant in determining whether **the employer has met its burden** of job availability." *Stevens, supra* at 377 (quoting *Vista International Hotel, supra* at 657; emphasis added).

With respect to the factual scenario in *Stevens,* we held:

> It is undisputed that Stevens' termination from the [second employer] was not due to the lack of good faith in Stevens' efforts to perform the job; nor is there any question that Stevens' work-related injury prevented him from returning to his prior job with [the original employer]. Stevens met his burden of proof under *Pieper* to establish that his work-related injury continues and that his earning power was once again adversely affected by his injury through no fault of his own. In the absence of any evidence of available employment that Stevens was capable of performing pursuant to *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987), the reinstatement of benefits was proper.

*Stevens, supra* at 377.[3]

Justice Saylor filed a concurring opinion joined by then-Justices Castille and Cappy. Justice Saylor expressed the

---

**3.** In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa.240, 532 A.2d 374 (1987), this Court established a four-pronged test, including relevant burdens of proof, where an employer wishes to modify benefits payable to an injured worker allegedly capable of returning to some form of work. The *"Kachinski* test" is as follows:

> 1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
> 2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.

opinion that the *Pieper* standard, then being affirmed in *Stevens,* placed upon the claimant the burden to prove "good faith" or lack of "fault" in connection with the determination of job availability. Justice Saylor noted that placing such burden on the claimant was problematic for several reasons. First, in other proceedings under the Act, including those disposing of claim, modification, and suspension petitions, the burden to show lack of "good faith" or "fault" is placed on the employer. Second, our reasons for placing the burden on the claimant in the reinstatement of suspended benefits context were not evident from our decisional law; that law had consistently placed the burden of showing job availability on the employer as a matter of fundamental fairness. Third, such burden adds an unnecessary layer of complexity to workers' compensation litigation. *Stevens, supra* at 377 (Saylor, J. concurring). In fact, Justice Saylor noted that Section 413(a) itself, without explicitly stating so, appears to place the burden on an employer to establish that, during reinstatement of suspended benefits proceedings, the claimant's loss of earnings did not result from disability arising from the work injury. *Id.* at 378 n. 1. Justice Saylor would have relegated the concept of

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job[,] then claimant's benefits should continue.

Obviously, the viability of this system depends on the **good faith** of the participants. The referrals by the employer must be tailored to the claimant's abilities and be made in a good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation. By the same token, employees must make a good faith effort to return to the work force when they are able, and their benefits can be modified for failure to follow up on referrals or for willfully sabotaging referrals. If an employee refuses a valid job offer[,] his benefits can also be modified if it is found he had no basis upon which to do so. Of course medical evidence which rebuts the employer's evidence of a change in condition, or indicates the unacceptability of the offered employment, can be a basis for a determination that claimant had a valid reason for refusing a job offer.

*Id.* at 380 (emphasis added). Recently, we stated that Section 306(b), 77 P.S. § 512(2), as amended in 1996 with the addition of subsection (2), "replaced this Court's *Kachinski* approach." *Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.),* 603 Pa.74, 981 A.2d 1288, 1292 (2009).

"fault," as articulated in the *Pieper* standard, to those specific provisions of the Act or holdings from this Court that would prohibit a reinstatement of benefits, such as the preclusion from receiving compensation for self-inflicted injuries or those caused by the claimant's violation of law. *See* 77 P.S. § 431.

The factual scenario in *Stevens* is quite similar to that of the present case in the following respects. In both cases, the claimants retained residual disability from their **pre-injury** jobs, took jobs within their restrictions with second employers, and were let go from those positions. In the case of *Stevens*, discharge was because of job performance; in the instant case, discharge was for economic reasons unrelated to performance. The cases are distinguishable from each other, however, in one principal respect. The claimant in *Stevens* never returned to work with his time-of-injury employer in a light-duty capacity, whereas Claimant in the instant case did so, and then left this light-duty position to take a job with a second employer, while retaining the physical capability to perform the **post-injury** light-duty job with Employer.

For the Commonwealth Court in this case, this was a critical distinction, and for this reason it declined to follow *Stevens*, instead relying on its own precedent of *Horne v. Workers' Compensation Appeal Board (Chalmers & Kubeck)*, 840 A.2d 460 (Pa.Cmwlth.2004), and *Welsh v. Workmen's Compensation Appeal Board (L.W. Miller Roofing Co.)*, 686 A.2d 59 (Pa.Cmwlth.1996). *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, No. 1553 C.D. 2007, memorandum opinion at 6–7 (Pa.Cmwlth. filed April 17, 2008). *Horne* and *Welsh* each set forth the proposition that an injured worker who leaves employment with the time-of-injury employer to take employment with another employer for reasons unrelated to the work injury assumes the risk that such subsequent employment may end in discharge. *Horne, supra* at 467; *Welsh, supra* at 61. In those cases, as well as the present one, the Commonwealth Court determined that the circumstance of a claimant leaving light-duty employment with the time-of-injury employer to take employment with another employer for better pay or working conditions might

be considered "fault" for purposes of the first prong of the *Pieper* standard. As the court stated in the present case:

Claimant maintains that the burden should have shifted to [Employer] because he exhibited no "bad faith" in seeking a better paying job thereby saving [Employer's] workers' compensation carrier from having to pay the balance of his pre-injury wages. We do not, however, necessarily equate "fault" with bad faith. Fault, in this context, can be equated with taking responsibility for one's decisions. As we noted in *Welsh*, "where a claimant voluntarily leaves a light-duty position, the duties of which he was able to perform despite his injury, to take another job," his earning power is adversely affected through fault of his own. *Id.* at 61. Such a claimant merely made a decision to take a risk, which due to the uncertainties of life, might or might not have turned out for the better.

*Bufford, supra* at 6 n. 4.

Accordingly, the Commonwealth Court framed the "sole issue" before it as "whether the WCJ erred in concluding that [C]laimant's current loss of earnings was attributable solely to his voluntary resignation from his time-of-injury employer and not to his original work injury." *Id.* at 1.[4] Because the WCJ specifically found that Claimant was capable of performing his **post-injury** light-duty job with Employer, left his light-duty position with Employer for improved economic circumstances and working conditions, and did not leave this position because of the work injury, the Commonwealth Court concluded that Claimant's reinstatement petition was properly denied. More specifically, the Commonwealth Court determined that the WCJ's critical findings of fact established that Claimant never met **his** burden of proof under *Pieper* and *Stevens*. For that reason, "[t]he burden simply never shifted to [Employer] to establish the availability of work that [C]laimant was capable of performing." *Id.* at 6 (footnote omitted).

We do not agree with these conclusions. As we attempted to make clear in *Pieper* and *Stevens,* the standard under which

4. The WCAB also saw the issue in this light.

a claimant may reinstate suspended benefits involved a concept of "fault" tied directly to the issue of job availability. *Pieper, supra* at 305, n. 8; *Stevens, supra* at 374. Indeed, in *Stevens,* we specifically mentioned this concept with regard to notions of **"good or bad faith in connection with termination, since fault-based considerations have been deemed relevant in determining whether the employer has met its burden of job availability."** *Stevens, supra* at 377 (quoting *Vista International Hotel, supra* at 657; emphasis added).

■ Further, as we observed in *Stevens,* the concept of "fault" is a "judicial construct." *Stevens, supra* at 374. More significantly, it is a "judicial construct" devised to implement specific legislative interests in a comprehensive statute. Therefore, it is not a concept subject to the accretions of judicial interpretation unless such interpretation has firm grounding in specific provisions of the Act. There is nothing in the Act supporting the conclusion of the Commonwealth Court that a claimant is ineligible for a reinstatement of suspended benefits because he or she left modified-duty post-injury employment with the time-of-injury employer for better pay or working conditions with another employer and is later laid off. Thus, we cannot agree with the Commonwealth Court that the act of leaving post-injury employment to take employment with another employer for reasons unrelated to the work injury is a "fault" contemplated by the *Pieper* and *Stevens* standard or a reason of its own to bar reinstatement of benefits under Section 413(a).

The issue regarding Claimant's disability, for which he sought a reinstatement of benefits, is one of loss of earning power. *See, e.g., Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries),* 536 Pa.490, 640 A.2d 386, 391 (1994) (quoting and citing cases) ("In the interpretation of the ... Act[,] the word 'disability' is to be regarded as synonymous with 'loss of earning power.' "); *see also* 77 P.S. § 512 (which defines partial disability benefits according to loss of earnings power). In both *Stevens* and the present case, loss of earnings power is traced to an inability to perform **pre-injury** employment, with the loss of earnings arising anew for

each claimant because of discharge from modified-duty with the second employer. As the claimant in *Stevens* met his burden as established by *Pieper*, so did Claimant in the present case.

■ It cannot escape notice that the Commonwealth Court's holding leads to an anomalous result: claimants are eligible for reinstatement of benefits when discharged from modified-duty positions by time-of-injury employers, but become ineligible for such benefits simply for taking modified-duty positions with other employers, from which they are then discharged. *See Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Laubach)*, 563 Pa.313, 760 A.2d 378 (2000) (holding that an injured claimant is eligible for reinstatement of total disability benefits when discharged from modified-duty employment, which eligibility is subject to rebuttal by the employer on grounds that work is available within the claimant's restrictions) (Per Zappala, J., with four Justices specially concurring).[5] Under the Commonwealth Court's holding, this disparity would exist even where, as here, by taking a position with higher pay with another employer, the claimant relieves the time-of-injury employer from paying **any** benefits at all, during the new position's duration. Such disparate results seem hardly compatible with either the salutary purposes of the Act[6] or the cost containment goals

---

**5.** Indeed, the WCJ in this case noted, with approval, the identical disparity of treatment. *See* WCJ Decision, dated October 26, 2006, at 3, Finding of Fact No. 11 ("This WCJ finds, however, that [C]laimant has left, not his pre-injury job, but a post-injury job[,] which he had been able to perform[,] for a job at a higher pay, when he could have continued to have stayed [with Employer;] and when [Employer] went out of business, [C]laimant would have been reinstated to his worker's [sic] compensation benefits.").

**6.** "Our basic premise in work[ers'] compensation matters is that the Work[ers'] Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 575 Pa.66, 834 A.2d 524, 528 (2003) (quoting *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa.279, 597 A.2d 1116, 1120 (1991)). "Accordingly, borderline interpretations of the Act are to be construed in the injured party's favor." *Id.* (quoting *Harper & Collins v. Work-*

evident in relatively recent amendments made to the Act.[7] Moreover, the decision of the Commonwealth Court appears at odds with basic considerations of the economic underpinnings of our society, where workers should be encouraged to take opportunities to lawfully better their economic circumstances, not penalized for doing so.

Accordingly, we hold that the Commonwealth Court erred by interpreting the concept of "fault" under the *Pieper* and *Stevens* standard to encompass matters other than job availability or those matters that specifically bar a claimant from reinstatement of benefits under the Act or our decisional law. Moreover, the Commonwealth Court erred in this case by divorcing the concept of "fault" from job availability.

This latter point requires that we address the issue of the relative burdens of proof in reinstatement of suspended benefit proceedings. The decisions of the lower tribunals in the present case illustrate that the issue of these relative burdens remains far from clear. Quite apparently, the confusion is centered upon the "judicial construct" of "fault" articulated in the *Pieper* and *Stevens* standard. This confusion is understandable. On the one hand, under the *Pieper* and *Stevens* standard, the issue of "fault" is mentioned as part of the first prong of **the claimant's burden.**[8] *See Stevens, supra* at 377 (Saylor, J. concurring). On the other hand, in neither *Pieper* nor *Stevens* did we further explain the claimant's "burden" with respect to this concept. Rather, we described the claimant's burden in terms of his or her need to establish that the present disability is, in fact, the renewed continuation of the original disability. *Pieper, supra* at 305. We consistently described the concept of "fault" in terms of **the employer's burden** to establish job availability. *See Pieper, supra* at 305, n. 8; *Stevens, supra* at 374, and 377.

men's Compensation Appeal Board (Brown), 543 Pa.484, 672 A.2d 1319, 1321 (1996)).

7. *See, e.g.,* the Act of June 24, 1996, P.L. 350, No. 57; and the Act of July 2, 1993, P.L. 190, No. 44.

8. "First, [the claimant] must prove that through no fault of his own his earning power is once again adversely affected by his disability." *Pieper, supra* at 305.

A thorough reading of these cases suggests that the *Pieper* and *Stevens* Courts did not actually intend that the issue of "fault" be part of the claimant's burden. Rather, the *Pieper* and *Stevens* standard made clear that the claimant's bid for reinstatement of benefits was subject to rebuttal by the employer on proof that the claimant had acted in bad faith by refusing work within his or her capabilities, or was otherwise disqualified from reinstatement of benefits pursuant to specific provisions of the Act.[9] Thus, the need to clarify the relative burdens where a claimant seeks reinstatement of suspended benefits is evident. For this, we turn, once again, to Section 413(a).

Section 413(a) establishes that, pursuant to petition by either party, benefits may be reinstated "at any time ... upon proof that the disability of an injured employe has increased [or] recurred." 77 P.S. § 772. Clearly, Section 413(a) places the burden on a claimant seeking reinstatement of benefits to establish that his or her disability has increased or recurred. However, Section 413(a) also provides that "where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury[,] ... payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury." *Id.* As Justice Saylor noted in his *Stevens* concurrence, the last clause of this provision indicates that the burden of proof would shift to the party opposing the reinstatement petition to show "that the loss in earnings does not result from the

---

**9.** *See Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.),* 537 Pa.223, 642 A.2d 1083, 1085 (1994) (holding that a claimant seeking reinstatement of suspended benefits does not have to present medical evidence to establish the continuation of the work-related injury, but may satisfy his or her burden by credibly testifying that the prior work injury continues; at that point, "the burden shifts to his [or her] employer to prove the contrary"); *Id.* at 1085 (Zappala, J. concurring) ("I join the Opinion of the Court with the understanding that on remand the employer shall have the opportunity to introduce evidence to rebut [the claimant's] testimony that his injury continued ... or to show that any loss of earnings ... was not attributable to the injury but caused by other factors.")

disability due to the injury." *Stevens, supra* at 378 n. 1 (Saylor, J. concurring; quoting 77 P.S. § 772).

Thus, in accordance with Section 413(a), we modify the *Pieper* and *Stevens* standard in the following manner. A claimant seeking reinstatement of suspended benefits must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim. The claimant need not re-prove that the disability resulted from a work-related injury during his or her original employment. Once the claimant meets this burden, the burden then shifts to the party opposing the reinstatement petition. In order to prevail, the opposing party must show that the claimant's loss in earnings is not caused by the disability arising from the work-related injury. This burden may be met by showing that the claimant's loss of earnings is, in fact, caused by the claimant's bad faith rejection of available work within the relevant required medical restrictions or by some circumstance barring receipt of benefits that is specifically described under provisions of the Act or in this Court's decisional law.

We hold that a claimant remains eligible for reinstatement of suspended benefits where the claimant's employment with a post-injury employer is terminated, even where the claimant had previously performed modified post-injury duties for the time-of-injury employer. To the extent that their holdings are to the contrary, we specifically disapprove of *Horne, supra* and *Welsh, supra.*

For the reasons set forth above, we reverse the order of the Commonwealth Court and remand this case for treatment consistent with this Opinion.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, BAER and TODD join the opinion.