IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kurt Serafini,                               :
                    Petitioner              :
                                            :    No. 4 C.D. 2016
            v.                              :
                                            :    Submitted:  May 20, 2016
Workers' Compensation  Appeal              :
Board (Keystone Community                   :
Resources),                                 :
                    Respondent              :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  September 7, 2016


            Kurt Serafini (Claimant) petitions for review of the December 8, 2015,
order of the Workers' Compensation Appeal Board (Board) affirming a Workers'
Compensation Judge's (WCJ) decision to deny Claimant's reinstatement petition.


**Facts and Procedural History**

            On May 11, 2009, Claimant sustained injuries during a client interaction
for Keystone Community Resources, Inc. (Employer), which provides community-
living homes for individuals with developmental and intellectual disabilities.
Employer issued a notice of compensation payable, acknowledging liability for
injuries to Claimant's neck, face, shoulder, and back.  Claimant returned to work on
May 26, 2009, but continued to receive medical treatment for his work injuries,

including prescription medications, physical therapy, chiropractic treatment, and injections. Thereafter, Claimant filed a claim for continued injuries arising from his work injury. During the pendency of his claim petition, Claimant filed a utilization review petition seeking payment from Employer for chiropractic treatment he received. Employer also filed a petition to terminate Claimant's benefits. By order dated February 15, 2012, a WCJ granted Claimant's claim petition but immediately suspended benefits because he returned to work on May 26, 2009, at no loss of earnings.[1] (WCJ's Findings of Fact Nos. 2, 4-5.)

On November 19, 2012, Claimant filed a second claim petition[2] alleging that his injuries had worsened, rendering him totally disabled and unable to perform his job duties as of October 10, 2012.[3] Employer filed an answer denying the material allegations and the WCJ conducted a series of hearings. (WCJ's Finding of Fact No. 3.)

Lori Staples, Employer's program director, testified that she is responsible for overseeing a number of Employer's group homes. Specifically, she stated that she oversees the homes where Claimant worked; Pittston One Home and Prospect Home. She also testified that she is familiar with Claimant and his work injuries and has observed him in his work setting, although she conceded she does not observe him every day for his full shift. Staples explained that, during the period

---

[1] Additionally, the WCJ denied Employer's petition to terminate benefits and granted Claimant's utilization review petition. (WCJ's Findings of Fact No. 2.)

[2] The petition was originally filed as a claim petition. However, because Employer had already accepted Claimant's injuries as work related, the WCJ treated it as a reinstatement petition.

[3] Claimant also filed a second utilization review determination and a penalty petition, which the WCJ granted and are not at issue in this appeal.

between June 2012 and October 2012, Claimant worked at the Pittston One Home and was responsible for overseeing two residents who lived there. She further explained that the residents from the Pittston One Home were very high functioning and, consequently, Claimant was not required to do much lifting because the residents took out the garbage, vacuumed and swept the floors, and did their own laundry. Regarding Claimant's job requirements, Staples clarified that Claimant was not required to carry fifty pounds for twenty feet, not required to climb stairs carrying at least twenty pounds, nor was he required to run a distance of one-hundred feet up to two times per hour. She noted that the two residents at the Pittston One Home required one-to-one supervision and Claimant was responsible for providing the same; however, she explained that this could be performed via verbal directives from a seated position and did not require any physical work. (R.R. at 108-11, 119-22.)

Staples further testified that Claimant accepted a position at the Prospect Home and was required to complete paperwork, generate schedules, and oversee the residence in addition to his duties at the Pittston One Home. She explained that she believed the position at the Prospect Home was within Claimant's physical capabilities, including the medical restrictions from his work injury, because he was performing the same duties he performed at the Pittston One Home with the exception of providing direct care to clients. Staples stated that she was unaware of any aggressive outbursts within the past year, including any directed at Claimant, from the resident in the Prospect Home. She acknowledged that the resident had a history of explosive behavior and elopement that staff must be aware of and prepared to manage; however, she clarified that another person was the resident's individual direct-care professional, not Claimant. She noted that Employer modified Claimant's position at the Prospect Home and eliminated his duty to accompany and supervise

3

residents that went to dinner at local restaurants because he was concerned he could not sufficiently perform his duties. According to Staples, after the job modification, Claimant's duties consisted of basically paperwork. (R.R. at 111-18, 124-25, 127.)

Rebecca Hokien, Employer's senior director of human resources, testified that she is familiar with Claimant, his injuries, and his duties at the Prospect Home. She confirmed that Claimant had contacted her regarding concerns with his new assignment at the Prospect Home; specifically, Claimant was concerned that some client services may be inconsistent with his physical limitations. Hokien testified that, based on Claimant's concerns, his duties were modified to change his interactions with the client in question. According to Hokien, after the modification, Claimant's duties consisted of administrative work and were within his physical capabilities. She confirmed that modified-duty work was available to Claimant after October 10, 2012. (R.R. at 129-34.)

Employer also presented surveillance evidence of Claimant. The surveillance depicted Claimant spraying a pick-up truck with a hose he held in his right hand as well as reaching overhead to spray the roof of the truck. The video also showed Claimant walking his dog while holding the leash in his right hand, riding an all-terrain vehicle (ATV), and holding and maneuvering a leaf blower in his right hand. The surveillance occurred over a three-day period and at no time did Claimant exhibit restricted movement of his neck or right arm. (WCJ's Finding of Fact No. 12.)

Additionally, Employer submitted the deposition testimony of Dr. John Nolan, a board certified physician in orthopedic surgery and orthopedic sports medicine, who testified that he performed two independent medical examinations of

4

Claimant on May 18, 2011,[4] and February 27, 2013. Dr. Nolan stated that Claimant sustained his injuries as a result of an assault by a twenty-year old male at his place of employment. Dr. Nolan further testified that, when he saw Claimant on February 27, 2013, he had received multiple cervical, thoracic, and lumbar injections and had an EMG conduction study performed that was normal. He stated that Claimant complained of headaches, fatigue, hallucinations, and difficulty sitting down for long periods of time; however, he denied any numbness or tingling. (R.R. at 315, 320-31, 324-26.)

Dr. Nolan performed a physical examination of Claimant and reviewed his medical records; notably, he reviewed Claimant's MRI reports and observed degenerative changes that he did not attribute to Claimant's work injury. He opined that Claimant's condition was related to "wear and tear" and, over time, that wear and tear could produce neck pain, arm pain, or leg pain. Dr. Nolan agreed that Claimant's work injury consisted of multiple contusions to his neck, head, back, and right shoulder as well as a cervical strain. But, according to Dr. Nolan, Claimant had fully recovered from his work injuries, reached the maximum benefit of any kind of medical treatment, and did not need ongoing treatment. (R.R. at 325-36.)

Claimant testified that he remained symptomatic after he returned to work and his condition continued to worsen. He stated that, after he returned to work, Employer increased his job duties by assigning him to the Prospect Home where residents required one-on-one care. Claimant further testified that, after he returned to work, he experienced radiating pain down the right side of his neck, through his right shoulder, and into his right arm. He stated that he experienced increasing headaches and was unable to perform his work duties. Claimant noted that

_____

[4] Dr. Nolan testified for Employer during Claimant's original claim petition proceedings.

5

he stopped working as of October 10, 2012, and has not worked in any capacity since. (WCJ's Finding of Fact No. 7.)

According to Claimant, at the Pittston One Home, his responsibilities consisted of scheduling, budgeting, planning, recreational leisure, and accompanying the residents during community-based activities. He explained that his work had become more difficult because of the symptoms he was experiencing and stated that the resident at the Prospect Home did exhibit aggressive tendencies; specifically, Claimant stated that he observed the resident almost remove his bedroom door from its hinges. (R.R. at 150-53.)

In response to the surveillance evidence, Claimant testified that he walks his dog twice a day for three blocks and usually experiences neck and back spasms after the walks. However, he noted that, prior to his work injury, he would walk at least three miles a day and run three miles two to three times a week. Claimant confirmed that he owns an ATV and uses it to clean up after his dog. He also confirmed that he hosed off his truck for approximately five minutes. (R.R. at 154-56.)

Claimant submitted the deposition testimony of Dr. Sheryl Oleski, a board certified physician specializing in physical medicine and rehabilitation, who testified that she had previously provided care to Claimant, referred him to a physician in Philadelphia to pursue additional treatment options, and reevaluated him on April 9, 2012, prior to continuing physical therapy.[5] According to Dr. Oleski, Claimant complained of pain in the right side of his neck, his shoulder, and the middle of his back that existed at all times and limited his ability to sit, stand, and

---

[5] Dr. Oleski also testified for Claimant during his original claim petition proceedings. (R.R. at 173-234.)

walk.  Dr. Oleski stated that, at the time of his visit, Claimant was on leave from work because he was experiencing anxiety and chronic pain that was limiting his ability to perform his work duties.  (R.R. at 250-54.)

She testified that she performed a physical examination and observed that Claimant had some limited cervical range of motion in his right shoulder and muscle spasms in his cervical and thoracic paraspinals as well as his parascapular muscles.  Dr. Oleski confirmed that Claimant's shoulder problems would limit his ability to restrain a client or move equipment and recommended that he continue his physical therapy and chiropractic care, but she noted that he had 5/5 strength.  She also discussed the possibility of an X-ray or MRI of Claimant's shoulder to determine whether his history of calcific tendinitis was getting worse; however, she acknowledged that the calcific tendinitis was likely unrelated to his work injuries.  (R.R. at 256-57, 289-90, 293.)

Dr. Oleski next saw Claimant in August 2012 and stated that he had returned to work, which she did not consider unusual.  However, she testified that his complaints of physical pain had worsened; specifically, Claimant was experiencing more thoracic pain, numbness and tingling in his right arm, as well as weakness in the right arm.  Additionally, Dr. Oleski testified that Claimant complained of a resident at work with behavioral problems and expressed concern about the patient potentially injuring him.  She stated that she performed another physical evaluation and observed that:  Claimant's cervical range of motion was still slightly limited; he had no evidence of irritation with shoulder range of motion but still had mildly positive impingement on the right side; he had 5/5 strength and 2+ reflexes; but, he did have a positive Spurling's maneuver to the right, as well as muscle spasms in the cervical and thoracic region.  Dr. Oleski explained that she restricted Claimant from lifting

7

more than forty pounds, as well as bending, reaching, and climbing. She suggested that he not work around combative clients that would place him at increased risk of injury, recommended that updated MRIs of the cervical and thoracic spine area be performed, and referred him to a neurosurgeon in Philadelphia. (R.R. at 258-61, 295.)

Dr. Oleski further testified that she compared the updated MRIs to prior tests and observed that: Claimant's cervical spine showed evidence of diffuse degenerative change; a stable disc herniation at C5-6; a decrease in size of the right C6-7 disc herniation; stable narrowing of the cervical thecal sac at C4-5; and stable disc bulging at C3-4. She confirmed that she had previously opined that the disc herniations at C5-6 and C6-7 were a result of his May 11, 2009 work accident. However, she observed that the disc herniation at C5-6 remained the same whereas the disc herniation at C6-7 was smaller. Dr. Oleski testified that she saw Claimant again on October 12, 2012, and that he reported increased symptomology. Specifically, Claimant complained of increased burning pain in his right neck and shoulder, weakness in his arm, and frequent headaches, which Dr. Oleski stated were consistent with the updated MRIs. She also performed a physical examination and noted that everything was essentially unchanged except for some weakness in the triceps, positive upper nerve tension on the right, and another positive Spurling's maneuver that caused pain to his right side. Dr. Oleski stated that she reviewed Claimant's specific work duties and did not believe he was capable of performing those duties because of the weakness in his arm and because he was being prescribed pain medication that made him feel drowsy and groggy. At that point, Dr. Oleski referred Claimant to another neurosurgeon, Dr. Harrop. (R.R. at 262-69.)

8

Dr. Oleski testified that she saw Claimant again on November 1, 2012, and he advised her that he was tolerating the pain better since he was out of work but he was unable to drive and could not do as many activities because of the pain medication. She stated that Dr. Harrop had met with Claimant and that she had reviewed his notes recommending that an EMG be performed to identify and localize Claimant's pain generator; but, Dr. Harrop noted that there was no evidence of cord compression and his diagnostic studies indicated further progressive degenerative disc disease. Dr. Oleski further stated that she again met with Claimant on January 25, 2013, and that no significant change had occurred at that time although his cervical range of motion had slightly improved; however, she noted that she still kept him out of work pending further evaluation by the surgeon. She opined that, as of January 25, 2013, Claimant was still suffering from his May 11, 2009 work injuries and was incapable of working as a result of the same. (R.R. at 268-74, 291-92, 297.)

By order dated September 18, 2014, the WCJ determined that Claimant failed to meet his burden of proof and denied his reinstatement petition because, although not fully recovered from his work injuries, he was capable of performing his modified job duties. The WCJ specifically found, in relevant part:

> 20. This Judge has had the opportunity to view Claimant's demeanor throughout these proceedings and especially during his testimony. Claimant's testimony is accepted as credible and persuasive, in part. Although Claimant's testimony has been deemed credible and persuasive and accepted as fact in prior proceedings, this Judge is troubled with Claimant's actions captured on the surveillance. While this Judge accepts Claimant's testimony that he continues to suffer from residual symptoms arising out of the work injury, Claimant's actions as captured on surveillance are inconsistent with the physical limitations he describes. Based upon the same, together with a review of the record as a whole, Claimant['s] testimony that he is

9

incapable of performing the modified job duties of the position at the Prospect group home is rejected. In arriving at this determination, the testimony of Ms. Staples and that of Ms. Hokien concerning the modifications to Claimant's job duties and that the position remained available to Claimant at no loss in earnings is accepted as credible and persuasive.

21. To the extent Dr. Nolan found Claimant to be fully recovered from the work injury, his testimony is rejected. The testimony of Claimant's treating physician that Claimant has not fully recovered from the work injury, together with Claimant's credible testimony that he continues to remain symptomatic, is accepted as more persuasive.

(WCJ's Findings of Fact Nos. 20-21.)

Claimant appealed the WCJ's decision to the Board, which affirmed the WCJ. Thereafter, Claimant appealed to this Court.

On appeal,[6] Claimant argues that the Board erred in affirming the WCJ's decision because the WCJ's credibility determinations conflicted with his prior credibility determinations. According to Claimant, the WCJ credited Employer's expert's testimony when he rejected similar testimony during the litigation of Claimant's original claim petition. Claimant also argues that the WCJ's decision was erroneous because it was contrary to the evidence of record. Specifically, Claimant argues that the WCJ improperly considered the surveillance evidence and relied too heavily on that evidence in the context of Claimant's job duties.

---

[6] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

10

## Discussion

Section 413 of the Workers' Compensation Act (Act)[7] provides that:

> A [WCJ] . . . may . . . reinstate . . . a notice of compensation payable . . . or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased . . . ."

77 P.S. §772.

A claimant's "disability" is synonymous with a "loss of earning power." *Birriel v. Workmen's Compensation Appeal Board*, 435 A.2d 292, 293 (Pa. Cmwlth. 1981). A claimant seeking reinstatement of benefits "must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 558 (Pa. 2010).

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id*. The WCJ's findings will not be disturbed when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a

---

[7] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.

11

finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). Where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's finding. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

### The WCJ's Prior Credibility Determination

Claimant first argues that the Board erred in affirming the WCJ's decision because the WCJ credited testimony that he previously rejected. This argument is unpersuasive. Claimant specifically avers that the WCJ credited Dr. Nolan's testimony that Claimant had recovered from his work injury and, thus, was inconsistent with his prior credibility determination rejecting the same during Claimant's original claim petition litigation. However, Claimant mischaracterizes the WCJ's findings. In the present matter, the WCJ specifically found "[t]o the extent Dr. Nolan found Claimant to be fully recovered from the work injury, *his testimony is rejected.*" (WCJ's Finding of Fact No. 21) (emphasis added). Therefore, there is no inconsistency in the WCJ's determinations; he rejected Dr. Nolan's testimony that Claimant had fully recovered from his work injuries in both proceedings. Nevertheless, because the WCJ determined that Claimant failed to meet his burden to prove that his earning power was adversely affected, he denied the reinstatement petition. Accordingly, this Court discerns no error in the WCJ's credibility determination.

**Weight of Surveillance Evidence**

Next, Claimant alleges that the WCJ improperly relied on surveillance evidence and disregarded competent record evidence indicating that he could not perform his work duties.

As articulated above, the weight and credibility of evidence is the sole province of the WCJ, the WCJ's findings will not be disturbed when they are supported by substantial evidence, and it is irrelevant whether the record contains evidence supporting findings contrary to those made by the WCJ. Here, the WCJ "review[ed] the record as a whole," rejected Claimant's testimony that he was incapable of performing the modified job duties, and concluded that Claimant failed to meet his burden to establish that his earning power had been adversely affected notwithstanding that he still suffered from residual symptoms from the work injury. (WCJ's Finding of Fact No. 20.) The WCJ also credited Employer's witnesses' testimony regarding Claimant's modified job duties, his wages, and the availability of the position. *Id.* Therefore, the record contains substantial evidence to support the WCJ's decision and, accordingly, those findings are conclusive on appeal. *See Sloane Nissan v. Workers' Compensation Appeal Board (Zeyl)*, 820 A.2d 925, 927 (Pa. Cmwlth. 2003) ("So long as the findings of fact of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal."). Thus, Claimant's argument that the WCJ improperly relied on surveillance evidence and disregarded other record evidence must fail.

**Conclusion**

Claimant's argument that the WCJ's credibility determinations were inconsistent and, therefore, improper is without merit because the WCJ rejected Dr.

13

Nolan's testimony that Claimant had fully recovered from his work injuries in both proceedings. Moreover, Claimant's argument that the WCJ erred in evaluating the weight of record evidence must fail because the WCJ's findings are supported by substantial evidence and, consequently, are binding on appeal.

Accordingly, the Board's order is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kurt Serafini,                :
             Petitioner       :
                              :    No. 4 C.D. 2016
             v.                  :
                              :
Workers' Compensation Appeal    :
Board (Keystone Community       :
Resources),                     :
             Respondent    :

## ORDER

AND NOW, this 7th day of September, 2016, the December 8, 2015, order of the Workers' Compensation Appeal Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge