IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina Butterfield,                            :
             Petitioner                  :
                                          :
         v.                           :   No. 71 C.D. 2024
                                          :
Hallmark Marketing Corp.                     :   Submitted: October 8, 2024
(Workers' Compensation Appeal                :
Board),                                      :
             Respondent                  :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: November 20, 2024

Tina Butterfield (Claimant) petitions for review of the January 11, 2024 opinion and order of the Workers' Compensation Appeal Board (Board), which affirmed the Workers' Compensation Judge's (WCJ) decision and order granting Hallmark Marketing Corp.'s (Employer) Termination Petition and denying Claimant's Reinstatement and Penalty Petitions. Upon review, we affirm.

**Facts and Procedural History**

Claimant was injured during the course and scope of her employment as a machine operator with Employer on November 12, 2021, when she was stacking 28-pound boxes of magic markers on pallets. On March 18, 2022, Employer issued a Notice of Temporary Compensation Payable (NTCP), which indicated that Claimant felt pain running down the inside of her right arm, burning in the right shoulder, neck pain, and locking of the neck. The NTCP was converted to a Notice of Compensation Payable.

On June 29, 2022, Employer filed a Termination Petition alleging that Claimant had fully recovered as of March 10, 2022. On July 14, 2022, Claimant filed an answer, denying the allegations.

On September 1, 2022, Claimant filed a Reinstatement Petition seeking to reinstate her indemnity benefits as of September 1, 2022, based upon the fact that she was terminated due to her inability to perform her work duties because of the work accident. On September 13, 2022, Employer filed an answer, denying the allegations.

On October 3, 2022, Claimant filed a Penalty Petition alleging that Employer refused to pay for certain medical treatment allegedly related to her work injury. Employer filed an answer, denying the allegations. A hearing was held on October 25, 2022, at which Claimant testified in opposition to Employer's Petition and in support of her Petitions. Claimant testified that she was a machine operator and operated a machine that printed colors and names on the barrels that came from the molding machine. She explained that when she was stacking pallets, her neck locked up and she felt pain shooting down the inside of her right arm and lost feeling in most of her right hand. (Reproduced Record (R.R.) at 104a-06a.) She first treated after the injury with Faton Bilali, M.D. on December 2, 2021. *Id.* at 106a. Dr. Bilali ordered a magnetic resonance imaging (MRI) exam and referred her to Dr. Troy Wood, who removed her from work. Dr. Wood performed a C7-T1 interlaminar epidural steroid injection and placed her on restricted duty. Dr. Wood later gave her a second injection. She was out of work for three weeks in February 2022, because no light-duty work was available. *Id.* at 109a. On March 30, 2022, Dr. Wood released her to full duty. She had difficulty performing her job. She had trouble sleeping due to pain and was tired all the time at work. In April of 2022, she was folding cardboard trays for three days

in the packing department and had pain. Dr. Bilali sent her to "Dr. Ly,"[1] who scheduled another epidural steroid injection for the end of June 2022. The injection was cancelled when Claimant was informed the bills would not be covered by workers' compensation. Employer stipulated at the hearing that it refused to pay for an injection performed by Dr. Ly for Claimant's "herniated disc and radiculopathy" because those diagnoses were not included in the accepted work injury. *Id.* at 132a. As of the date of the hearing, Claimant's complaints included stiffness in her neck, pain radiating down her right arm, and numbness in the thumb and first finger of her right hand. *Id.* at 116a.

Claimant's employment with Employer was terminated on August 31, 2022, due to issues with the quality of her work. *Id.* at 111a, 114a. She agreed that her error at work on April 11, 2022, resulted in 92,200 pieces of product being miscolored. *Id.* at 122a. She also agreed that she was on a performance improvement plan prior to that time due to issues with the quality of her work. *Id.* at 122a. She further agreed that she had a second incident regarding quality control issues on August 16, 2022, which resulted in another 100,000 pieces of product being miscolored and which ultimately resulted in the termination of her employment. *Id.* at 124a-25a.

In opposition to Employer's Petition and in support of her Petitions, Claimant presented the January 13, 2023 deposition testimony of Dr. Bilali, who is board certified in Sports Medicine and Family Practice. *Id.* at 139a, 147a. Dr. Bilali first saw Claimant on December 2, 2021. *Id.* at 149a. Claimant reported to Dr. Bilali a history of neck pain that radiated to her right shoulder and arm that began two weeks prior when she was reaching for something. *Id.* at 149a. On examination, Dr. Bilali noted Claimant had spasms and tenderness in her neck, pain with movement of her

---

[1] Dr. Ly's first name is nowhere in the Reproduced Record or the briefs.

neck, decreased range of motion in her neck, and decreased range of motion in her right arm/shoulder. *Id.* at 149a. Based upon this history and physical examination, Dr. Bilali diagnosed Claimant with cervical radiculopathy and neck pain. *Id.* at 150a. He believed Claimant's diagnoses were related to the mechanism of injury reported by Claimant. *Id.* Dr. Bilali recommended an MRI and issued a note with modified work restrictions. *Id.* Dr. Bilali treated Claimant on two more occasions. On December 10, 2021, Dr. Bilali reviewed the MRI performed on November 9, 2021. Dr. Bilali testified the MRI revealed degenerative disc disease at multiple levels including C2-C3, C3-C4, C4-C5, C5-C6, and C7-T1. *Id.* at 151a. He testified the MRI also revealed multiple disc protrusions and impinging on the right nerve root at C6 which would correlate with her symptoms. *Id.* Claimant had the same complaints and physical examination findings. *Id.* at 152a. Dr. Bilali's diagnosis and work restrictions were unchanged. Dr. Bilali referred Claimant to Dr. Wood, a physiatrist. Dr. Bilali understood Claimant saw Dr. Wood on December 16, 2022. Dr. Bilali last saw the Claimant on April 25, 2022. *Id.* at 153a-54a. At this visit, Claimant said she was doing well after seeing Dr. Wood but reported pain that returned to her right arm after she was folding boxes three days prior, along with headaches. Claimant's physical examination and diagnoses remained the same. Dr. Bilali referred Claimant back to the specialist and issued work restrictions of no lifting over 20 pounds. Dr. Bilali understood Claimant saw Dr. Ly on May 26, 2022, because Dr. Wood had left the practice in the meantime. Dr. Bilali opined Claimant was not fully recovered from her work-related injuries as of April 25, 2022. He testified that "[i]t seemed like she had a reaggravation of the same injury at that time." *Id.* at 154a. He testified that her prognosis was fair. *Id.* at 155a. On cross-examination, Dr. Bilali admitted that he did not review any medical records that pre-dated November 12, 2021, and he did not know whether Claimant had any prior

4

medical treatment for her neck. *Id.* at 157a, 159a. Dr. Bilali was not aware Claimant had undergone an MRI of the cervical spine in 2019 and a C7-T1 injection in 2020. *Id.* at 159a.

Claimant also presented the deposition testimony of Scott Naftulin, D.O., who is board certified in physical medicine and rehabilitation with a subspecialty certification in pain management. *Id.* at 175a, 182a. Dr. Naftulin performed an evaluation of Claimant on January 12, 2023. *Id.* at 183a, 203a. Claimant reported to him a history of an injury. At the time of the examination, she complained of neck pain more severe than her right upper extremity pain. *Id.* at 188a.

Dr. Naftulin reviewed Claimant's medical records. *Id.* at 189a-92a. He noted that she had a prior left shoulder injury for which she underwent a rotator cuff repair in 2019. Dr. Naftulin also performed a physical examination of Claimant. *Id.* at 193a-95a. Claimant had limitations in bending her neck backwards (extension) and bilateral side bending. She could bend her neck forward (flexion) fully without pain. Her range of motion of the upper extremities was normal on both sides. *Id.* There was tenderness to palpation over the right cervical paraspinal muscles and facet joints into the upper trapezius muscle. Dr. Naftulin found no muscle spasm or trigger points. *Id.* The neurological examination revealed no deficits in strength, reflexes, or sensation. The Spurling maneuver, where the head is manipulated to test for cervical radiculopathy, was positive to the right. *Id.* Dr. Naftulin reviewed the cervical spine MRI films from December 9, 2021. *Id.* Dr. Naftulin testified the MRI showed multilevel degenerative disc and age-related degenerative changes with varying degrees of disc protrusion or herniation, and with impingement at least of the right C8 spinal nerve, in addition to possible impingement of the C6 and C7 spinal nerves on the right. *Id.* Dr. Naftulin rendered the following diagnostic impressions: (1) cervical

5

sprain/strain; (2) right cervical radiculopathy; and (3) aggravation of preexisting cervical spondylosis/stenosis/disc degeneration. *Id.* at 196a. Dr. Naftulin opined that all three of these conditions were related to the November 12, 2021 work incident. *Id.* Dr. Naftulin explained Claimant's history of experiencing neck pain and pain shooting down the right arm with numbness was consistent with the described mechanism of injury, *i.e.*, lifting a 27-pound box, and Claimant was asymptomatic before the incident occurred. *Id.* at 196a-97a. Dr. Naftulin opined Claimant has not fully recovered from these work-related conditions. Dr. Naftulin recommended a transforaminal epidural steroid injection, physical therapy and work hardening, and anti-inflammatory and/or muscle relaxant medication. Dr. Naftulin also recommended work restrictions of lifting to 20 pounds or less below shoulder level, working below shoulder level, and avoiding looking upward or downward for prolonged periods or repeatedly turning, extending, or side bending of the head. *Id.* at 198a. On cross-examination, Dr. Naftulin testified he performed an independent medical examination of Claimant at the request of her attorney. He has not treated Claimant and has no plans to treat Claimant.

Employer presented the deposition testimony of Robert W. Mauthe, M.D., who is board certified in Physical Medicine and Electrodiagnostic Medicine. *Id.* at 255a, 260a. He has an active clinical practice in which he primarily treats injured workers with disorders of the spine, including the neck and back. Dr. Mauthe performed an independent medical examination of Claimant concerning the work injury and her medical treatment. *Id.* at 263a-64a. At the time of his examination, Claimant reported that she was back to work on light duty. *Id.* at 267a. Dr. Mauthe also reviewed Claimant's medical records. *Id.* at 266a-68a. In particular, he noted that the December 9, 2021 cervical spine MRI showed a degenerative neck consistent with

6

Claimant's age, but no acute injuries. *Id.* at 266a, 269a-70a, 286a-287a. He also performed a thorough physical examination of Claimant, which yielded objectively normal results. *Id.* at 268a-69a. Dr. Mauthe opined Claimant sustained a work-related injury on November 12, 2021, consisting of right shoulder strain and a neck strain. He explained the mechanism of injury, lifting a box, was consistent with a neck and shoulder strain. He opined Claimant fully recovered from the work-related injury. He opined Claimant required no restrictions and no further treatment for the November 12, 2021 injury. He explained there was no evidence of a strain on examination. Claimant had normal strength and range of motion. Claimant told him she was back to baseline and was back to work. She denied any numbness, tingling, cramping, or problems with her neck. The MRI revealed no evidence of an acute injury. He testified that Claimant has a degenerative neck and a long history of neck pain. She had a previous C7-T1 interlaminar epidural injection in 2020. He opined that the diminished cervical extension was consistent with the MRI, kyphosis, and prior complaints of neck pain. Dr. Mauthe reviewed the treatment notes of Dr. Bilali, Dr. Wood and Dr. Ly. Dr. Mauthe disagreed with Dr. Ly's diagnoses of cervical radiculopathy and cervical disc disorder and C7-T1 disc herniation towards the right, likely aggravated by repetitive duties at work. He explained that Claimant's mechanism of injury is not consistent with the development of radiculopathy. He testified that Claimant has a degenerative neck with a history of prior treatment for it. He explained the diagnosis of radiculopathy requires positive clinical findings of numbness, tingling, atrophy, weakness, positive Spurling's maneuver, MRI findings consistent with an acute injury, and a positive electromyography (EMG). None of those were present in Claimant's case. There was no evidence of radiculopathy. Dr. Mauthe stated that Claimant has abnormalities at every single level in her neck: C2-C3, C3-C4, C4-C5, C5-C6, C6-C7,

7

C7-T1, T1-T2, T2, and T3. He explained it is impossible to determine whether one or all of these abnormalities are causing pain, but they are neither caused nor aggravated by the November 12, 2021 incident. On cross-examination, Dr. Mauthe explained the work-related injury was a sprain/strain superimposed upon a preexisting degenerative neck. In his opinion, Claimant healed from the work-related injury, but the preexisting non-work-related degenerative findings will never heal. Dr. Mauthe opined the work injury did not cause an aggravation of the preexisting condition.

The WCJ issued his decision and order on April 17, 2023. The WCJ credited the testimony of Employer's medical expert, Dr. Mauthe, over the testimony of Claimant and her medical experts, Dr. Bilali and Dr. Naftulin. (WCJ Decision, 4/17/23, at 8, Finding of Fact (FOF) 8.) The WCJ found that Dr. Mauthe's opinions were supported by Claimant's medical history, including preexisting cervical symptoms for which she underwent an epidural steroid injection in 2020. *Id.* The WCJ further found that Dr. Mauthe's opinions were supported by his comprehensive physical examination which revealed no clinical signs or symptoms of radiculopathy such as diminished strength, reflexes, or loss of sensation. *Id.* The WCJ found it significant that Dr. Mauthe's opinions are further supported by a thorough review of treatment records and diagnostic imaging studies, including the December 9, 2021 MRI of the cervical spine. *Id.* The WCJ was impressed with Dr. Mauthe's explanation that the MRI revealed no findings consistent with an acute or traumatic injury, but rather it showed abnormalities at every single level of Claimant's cervical spine that were neither caused nor aggravated by the November 12, 2021 work incident. *Id.* The WCJ was further impressed with Dr. Mauthe's explanation that Claimant recovered from the work-related cervical and right shoulder strains, but she is expected to continue to experience symptoms attributable to the preexisting non-work related degenerative

8

cervical condition which will never heal. *Id.* The WCJ found it important that Claimant's treating physician, Dr. Wood, released Claimant to return to full duty as of March 30, 2022, or 20 days after Dr. Mauthe's IME. *Id.* In rejecting the conflicting opinions of Dr. Bilali, the WCJ found it significant that Dr. Bilali did not know whether Claimant had any medical treatment that pre-dated the November 12, 2021 incident and did not review any prior medical records. *Id.* at 8-9, FOF 8. Dr. Bilali was unaware Claimant underwent a cervical MRI in 2019 and received a C7-T1 injection in 2020. *Id.* at 9, FOF 8. In rejecting the conflicting opinions of Dr. Naftulin, the WCJ found it significant that Dr. Naftulin's January 12, 2023 examination findings were generally consistent with Dr. Mauthe's exam findings, demonstrating no muscle spasm or trigger points consistent with cervical and right shoulder strain, and no deficits in strength, reflexes, or sensation consistent with cervical radiculopathy. *Id.*

Based on his findings of fact and credibility determinations, the WCJ granted Employer's Termination Petition, concluding that Employer met its burden of proving Claimant had fully recovered from the November 12, 2021 work-related injury as of March 10, 2022. *Id.* at 9, Conclusion of Law (COL) 2. The WCJ denied and dismissed Claimant's Reinstatement Petition because Claimant failed to meet her burden of proving her loss of earnings as of September 1, 2022, was attributable to the November 12, 2021 work-related injury. *Id.* at 9, COL 3. The WCJ also denied Claimant's Penalty Petition, concluding that Claimant failed to meet her burden of proving Employer failed to pay medical bills attributable to the November 12, 2021 work-related injury. *Id.* at 9, COL 4. Finally, with regard to Claimant's request for costs and attorney fees, the WCJ found that Claimant did not prevail in whole or in part, and therefore no costs or attorney fees were awarded. *Id.* at 9, COL 5. Claimant

9

filed an appeal to the Board. *Id.* at 45a-46a. By opinion and order issued on January 11, 2024, the Board affirmed the WCJ's decision in its entirety. *Id.* at 71a.

On appeal,[2] Claimant raises four issues. Specifically, Claimant argues that the WCJ's decision to grant Employer's Termination Petition was not supported by substantial competent evidence because Dr. Mauthe relied on an incorrect description of her injury. Next, she argues that the WCJ's decision relative to the denial of her Reinstatement Petition was not supported by substantial evidence because the WCJ relied on evidence that was not admitted into the record when formulating his opinions. In her third issue, she argues that the WCJ erred when he denied her Penalty Petition because Employer admitted it violated the Workers' Compensation Act (Act).[3] In her fourth issue, Claimant argues that the WCJ erred in denying her request for counsel fees and litigation costs.

## A. Termination Petition

In her first issue, Claimant argues that the WCJ erred in granting Employer's Termination Petition.

An employer is entitled to a termination of the claimant's benefits upon establishing that the claimant's disability connected to the work-related injury has ceased. *Giant Eagle v. Workmen's Compensation Appeal Board (Chambers)*, 635 A.2d 1123 (Pa. Cmwlth. 1993). A termination is properly granted if an employer presents unequivocal medical testimony that the claimant is fully recovered, can return to work without restrictions and the claimant's complaints of pain are not supported by the

---

[2] This Court's review of the Board's adjudication determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[3] Act of June 2, 2015, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

objective medical findings or are unrelated to the work injury. *Udvari v. Workers' Compensation Appeal Board (U.S. Air, Inc.)*, 705 A.2d 1290 (Pa. 1997).

Claimant argues that the WCJ erred by crediting Dr. Mauthe over her doctors and granting Employer's Termination Petition. She contends that her doctors both diagnosed her with cervical radiculopathy and neck pain and linked it to her work injury. She claims that Dr. Mauthe's testimony that she fully recovered was equivocal and incompetent because he admitted that during his examination of her that she had a decreased range of motion in her cervical spine. Therefore, she could not be fully recovered. She further claims that Dr. Mauthe did not review all her medical records whereas Dr. Naftulin did. She further argues that Dr. Mauthe's opinion of full recovery was based on an incomplete/incorrect diagnosis as he disputed the existence of radicular symptoms.

"An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the employee's work injury." *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998) (holding that termination was improper where the employer's expert did not rebut the claimant's credible complaints of ongoing pain and fatigue). "An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from [her] work-related injuries." *Paul v. Workers' Compensation Appeal Board (Integrated Health Services)*, 950 A.2d 1101, 1104 (Pa. Cmwlth. 2008). In a case where the claimant continues to complain of pain, the employer meets its burden when its medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without

11

restrictions, and that there are no objective medical findings that either substantiate the claims of pain or connect them to the work injury. *Shepherd v. Workmen's Compensation Appeal Board (John E. Shepherd)*, 443 A.2d 862 (Pa. Cmwlth. 1982).

While Claimant makes several arguments concerning the inadequacy of Dr. Mauthe's testimony and argues that the WCJ erred in accepting it over the testimony of both Drs. Bilali and Natfulin, this amounts to an attack on the WCJ's credibility determinations.

This Court will not disturb a WCJ's findings if there is substantial evidence in the record to support the findings. "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In a substantial evidence review, this Court may not reweigh the evidence but must simply determine whether the WCJ's "findings have the requisite measure of support in the record" as a whole. *Bethenergy Mines, Incorporated v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Additionally, "[the Court] must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1239 (Pa. Cmwlth. 2013). Finally, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quotation omitted).

The WCJ, as fact finder, was free to credit the testimony of Dr. Mauthe over the testimony of Claimant and her doctors. There was more than substantial evidence to support his factual findings. *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213, 216 n.6 (Pa. Cmwlth. 2008) ("[i]t is irrelevant whether there is evidence to support contrary findings; the relevant inquiry is whether substantial evidence supports the WCJ's necessary findings"). Accordingly, we find this issue to be without merit.

## B. Reinstatement Petition

In her second issue, Claimant argues that the WCJ erred in denying her Reinstatement Petition. As noted above, on September 1, 2022, Claimant filed a Reinstatement Petition seeking to reinstate her indemnity benefits as of September 1, 2022, based upon the fact that she was terminated due to her inability to perform her work duties as a result of the work accident.

Where the claimant seeks a reinstatement, she must prove that her earning power has been adversely affected by her work-related disability, which is a continuation of the disability that arose due to the original claim. *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548, 558 (Pa. 2010). A claimant seeking reinstatement of suspended benefits must prove that his or her earning power is once again adversely affected by his or her disability and that such disability is a continuation of that which arose from his or her original claim. Once the claimant meets this burden, the burden then shifts to the party opposing the reinstatement petition. *Id.* In order to prevail, the opposing party must show that the claimant's loss in earnings is not caused by the disability arising from the work-related injury. *Id.* A claimant that returns to her pre-injury position with restrictions and is subsequently laid-off is entitled to the presumption that her loss of earning power is

related to the work injury. *EMI Co. v. Workers' Compensation Appeal Board (Rathman)*, 738 A.2d 33 (Pa. Cmwlth. 1999).

Here, Dr. Mauthe's credible and competent opinions establish that Claimant fully recovered from the work injury as of March 10, 2022. Claimant testified that she had returned to full-duty work for Employer without restrictions on March 31, 2022, and that she was subsequently terminated on August 31, 2022 for quality control reasons that were totally unrelated to the work injury. Thus, any wage loss after that date was not related to the work injury.[4] Claimant also argues that the WCJ erred in relying upon a "Final Written Warning," which was not admitted into evidence in reaching his determination that Claimant was not entitled to a reinstatement of benefits. Contrary to Claimant's contention, the WCJ explained in his decision that he relied upon Claimant's own admissions that her two quality control errors led to her termination from employment in August of 2022.

Accordingly, we find this issue to be without merit.

### C. Penalty Petition

Claimant next argues the WCJ erred in denying her Penalty Petition. We disagree.

In a penalty petition, the claimant bears the burden of establishing a violation of the Act or its rules or regulations that appears on the face of the record.

---

[4] We note in limited circumstances a claimant may be entitled to a reinstatement of benefits after a termination. However, a claimant must prove, by precise and credible evidence, that her physical condition has actually changed since the termination. *National Fiberstock Corporation (Greater New York Mutual Insurance Company) v. Workers' Compensation Appeal Board (Grahl)*, 955 A.2d 1057 (Pa. Cmwlth. 2008). Here, Claimant testified she had returned to full duty work for Employer without restrictions and was subsequently terminated for causes unrelated to her work injury. Consequently, Claimant failed to meet any heightened burden of proving a reinstatement after a termination.

*Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Commission)*, 745 A.2d 1282 (Pa. Cmwlth. 2000). To avoid a penalty, the employer then carries the burden of proving that no violation of the Act occurred. Id. Pursuant to Section 306(f.1)(1) of the Act, 77 P.S. §531, the employer shall provide payment for reasonable surgical and medical services, services rendered by physicians or other health care providers, medicines and supplies, as and when needed.

Here, Claimant bore the burden of proving a violation of the Act or its rules or regulations that appears on the face of the record. *Shuster*. While Claimant alleged Employer violated Section 306(f.1)(1) of the Act, 77 P.S. §531, by failing to pay for causally-related medical treatment, she failed to introduce credible evidence supporting that allegation. The WCJ accepted Dr. Mauthe's testimony that he disagreed with Dr. Ly's diagnosis of a work-related radiculopathy and disc conditions, and instead opined that Claimant's issues were degenerative in nature. Thus, Claimant failed to prove that Employer failed to pay any bills causally related to her work injury.

Therefore, the WCJ did not err in denying Claimant's Penalty Petition.

### D. Litigation Costs and Attorney Fees

Finally, Claimant argues that she was entitled to litigation costs and attorney fees. However, pursuant to Section 440(a) of the Act, 77 P.S. § 996,[5] a claimant must be successful in whole or in part to be entitled to an award of attorney fees and litigation costs. Here, because the WCJ granted Employer's Termination Petition, and denied Claimant's Reinstatement and Penalty Petitions, she was not successful in any part of the litigation. Therefore, she was not entitled to any fees or costs.

---

[5] Added by the Act of February 8, 1972, P.L. 25.

Accordingly, because we find Claimant's issues to be without merit, we affirm the Board's order in its entirety.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision for this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina Butterfield,           :
         Petitioner          :
         :
         v.          :    No. 71 C.D. 2024
         :
Hallmark Marketing Corp.          :
(Workers' Compensation Appeal          :
Board),          :
         Respondent          :

## *__ORDER__*

AND NOW, this 20th day of November, 2024, the January 11, 2024 opinion and order of the Workers' Compensation Appeal Board is hereby **AFFIRMED**.

_____
PATRICIA A. McCULLOUGH, Judge